Dear Mr. Buchert:
You have requested the opinion of this office of the propriety of a proposed cooperative endeavor agreement between the Department of Revenue and Taxation (DORT) and the International Business Machines Corporation (IBM) which would develop a new integrated data processing tax system.
DORT internal documents submitted with your request indicate that several avenues have been explored as a means to achieve this objective and that you have determined that the proposed cooperative endeavor with IBM is the preferred vehicle because its approach is innovative and all encompassing and because DORT's experience with IBM over the last twenty-three years has been outstanding.
We note that prior to choosing to pursue this joint venture with IBM, DORT solicited and reviewed proposals from other potential joint venturers including COMSYS Information Technology Services, KPMG Peat-Marwick LLP, NCR Corporation and UNISYS Corporation.
The type of services which DORT seeks to obtain through this proposed cooperative endeavor are data processing consulting services which are routinely required to be procured pursuant to the provisions of R.S. 39:1481-1525, which requires the use of a request for proposals processed for the selection of a consultant. However, DORT is seeking to avail itself of the provisions of Article VII, Section 14 (C) of the Louisiana Constitution of 1974 which provides:
 Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Your submittal indicates that the work to be undertaken is massive and comprises the very heart of Louisiana's revenue generating technology. It is also clear that DORT's current technology is archaic and virtually impossible to maintain and support, as well as facing a melt-down with year 2000 problems. The Secretary of DORT has determined that the cooperative endeavor is the preferred regime for dealing with this situation and that IBM is the proposer who offers both greater expertise and greater value as a partner in this cooperative endeavor. Under these circumstances we can concur in DORT's use of the cooperative endeavor rather than using conventional procurement procedures.
Nevertheless, great caution must be taken to acknowledge the unique circumstances giving rise to this agreement and to insure that the state's interest is fully protected in the agreements between DORT and IBM. We do not feel that the agreements submitted with your request and executed by DORT's Secretary on May 22, 1997 adequately meet those objectives, and would suggest a comprehensive revision of those agreements to bring them into line with the state's standard contract terms for consulting services and to clarify certain substantive rights and obligations of the parties.
We have particular concern regarding the following matters:
1. The right of either party to terminate the agreement at any time upon a thirty (30) day notice with or without cause is clearly stated. However, should the state for any reason cancel this agreement prior to completion, it will forfeit all that has been spent on the contract to that point, since there does not appear to be any deliverables required until the completion of the entire project. The project Statement of Work (SOW) should be restructured so that there is a meaningful and useful deliverable at the end of each
stage or year of the project.
2. The proposed agreement states that "the annual investment is assumed to be a maximum of 50% by the state." This is not effective contractual language to limit the state's contribution to the project. A clearer, enforceable limitation on the state's contribution must be agreed to. Also, no percentage will have any meaning in this context unless a realistic method for measuring the contribution of IBM as well as the state is included in the agreement. This may be accomplished by providing a schedule of hourly fees for different consultant classifications, which fees can then be multiplied against the hours actually put into the project through the years as the project is implemented to determine the gross value of that portion of IBM's contribution. Likewise, IBM should provide a schedule of the value of software and other proprietary information which it may utilize in the execution of this project, so that as such materials are utilized, their value may be quantified in computing IBM's contribution to the overall project cost.
3. At the beginning of each new phase (year), the information called for above should be factored into the work plan and project budget for the forthcoming year to project the value of IBM's contribution and to find the necessary and appropriate level of the state's cash contribution.
4. An independent review panel of state data processing (DP) experts outside of DORT, should be constituted to perform an annual or semi-annual review of the status of project accomplishments and of proposed work for the next phase (year). Such DP experts can be drawn from the Legislative Auditor's Office, The Division of Administration's Office of Information Services and the Legislative Fiscal Office. This panel should be authorized to recommend to the Governor or the Legislature whether the state continues with this project.
5. A large part of the expense of the first year of the cooperative endeavor is for extensive new IBM hardware which will be required in order to pursue the rest of this project. You have indicated that DORT already has in hand the results of a sealed bid process for the procurement of this equipment and that IBM was the low bidder for this equipment. You also indicate that, as part of the cooperative endeavor, IBM will furnish the same equipment to DORT at a more favorable price and with embellishments which would not be included in the regular procurement. If this information is correct, it should be documented as part of the cooperative endeavor agreement.
We hope that these suggestions can be incorporated into revised documents for this proposed cooperative endeavor and that this can be done in a timely fashion to meet both DORT's and IBM's timetables for participation. We urge you to cooperate with the Procurement Support Team of the Office of Contractual Review to develop contractual terms which will adequately protect the state's interests and reflect the unique conditions which justify this extraordinary deviation from standard procurement procedure.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ______________________ GLENN R. DUCOTE
Assistant Attorney General
RPI/GRD/cla